IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ROBERT BAILEY,<br><br>      Plaintiff,<br><br>vs.<br><br>CITY OF BELLEVUE, NEBRASKA, a political subdivision of the State of Nebraska,<br><br>      Defendant. | 4:18CV3132<br><br>ORDER |

   This matter is before the Court on the three Notices of Intent to Serve Rule 45 Subpoena Duces Tecum (Filing Nos. 49-51) filed by Plaintiff, Robert Bailey, and the objections (Filing Nos. 61, 63, 69) to those subpoenas filed by Defendant, City of Bellevue, Nebraska. The Court held a telephone conference with counsel for the parties on March 27, 2020, regarding the City's objections to the Rule 45 subpoenas and ordered the parties to submit additional briefing on the dispute. The parties filed their briefs as ordered. (Filing No. 77; Filing No. 83). The matter is now fully submitted to the Court. For the following reasons the Court will overrule the City's Objections and permit Plaintiff to serve the Rule 45 Subpoenas on the non-parties.

### BACKGROUND

   Plaintiff filed the instant action asserting claims under the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), 42 U.S.C. §§ 12101 et seq., and the Nebraska Fair Employment Practices Act ("NFEPA"), Neb. Rev. Stat. §§ 48-1101 et seq., for disability discrimination, retaliation, interference and intimidation, and hostile work environment. Plaintiff alleges the following facts in his Amended Complaint (Filing No. 27).

   Plaintiff was employed by the City of Bellevue as a law enforcement officer between March 7, 1996, and June 3, 2019. Plaintiff "suffers from major depression, panic disorder, anxiety, chronic insomnia, and heart disease," and the City was aware of his impairments. In 2015, Plaintiff was working as a Sergeant within the Criminal Investigations Bureau ("CIB") on an eight-hour day shift. In the spring of 2015, Chief Mark Elbert told Plaintiff he would be moved from his CIB shift to a twelve-hour Road Patrol shift. Plaintiff's physician restricted him from working twelve-hour shifts due to his disabilities, so he obtained paperwork from the City's

Human Resources department ("HR") to formally request an accommodation. Before he submitted the paperwork, Plaintiff notified Chief Elbert of his intent to request an accommodation; Chief Elbert "became upset," threw the paperwork across his desk, and convinced Plaintiff not to submit the paperwork based upon Chief Elbert's assurance Plaintiff could remain in his CIB position. Despite this assurance, Chief Elbert emailed Captain Robert Wood asking if Plaintiff could be moved to the twelve-hour shift.

Plaintiff suffered a heart attack on January 31, 2016, underwent surgery, recovered, and subsequently "successfully passed a cardiac fitness for duty examination[.]" In April 2016, when Plaintiff notified Chief Elbert that Plaintiff would be returning to work rather than taking medical retirement, Chief Elbert again told Plaintiff he would be moved to the twelve-hour Road Patrol position. Chief Elbert stated Plaintiff would "lose" a formal accommodation request and indicated he did not want another disabled officer in his department. In July 2016, Plaintiff filed paperwork with HR formally requesting disability accommodations. In September 2016, the City required Plaintiff to complete a psychological fitness for duty examination. During that process, Plaintiff's supervisors, Lieutenant Timothy Melvin and Captain Wood, complained to the City's retained physician that Plaintiff did not answer his phone off-duty and used sick leave when he was late to work due to insomnia.

On October 14, 2016, Plaintiff, through his attorney, requested disability accommodations of keeping his eight-hour day shift position, getting seven to nine hours of sleep uninterrupted by off-duty phone calls, and a being given a flexible start time to accommodate sleep interruptions. On November 4, 2016, the City addressed Plaintiff's request to be free from off-duty phone calls but proposed moving Plaintiff to the twelve-hour shift. On November 18, 2016, Plaintiff's attorney rejected the City's proposed accommodations and provided a draft EEOC complaint if the City continued to reject Plaintiff's requested accommodations.

On November 20, 2016, Chief Elbert requested a private meeting with Plaintiff and Plaintiff's spouse, which took place later that morning. During the meeting, Chief Elbert told Plaintiff that HR and other City officials were "dug in" against Plaintiff's accommodation requests and were prepared for a long and "huge fight." Chief Elbert therefore proposed an "unofficial" and "secret" arrangement wherein Plaintiff would be permitted to stay in his eight-hour position if he withdrew his formal accommodation request and did not tell anyone, including Plaintiff's attorney, the real reason why. As part of this arrangement, Chief Elbert

advised Plaintiff not to answer his phone off-duty and to tell his supervisors he did not hear his phone. Plaintiff accepted this "unofficial" offer and withdrew his formal accommodation request that same afternoon.

On February 8, 2017, Plaintiff was informed by Chief Elbert that Elbert would be leaving his position and that Elbert's replacement had no intention of altering Plaintiff's "unofficial" accommodation such that Plaintiff would not need request a formal accommodation. Plaintiff asked Chief Elbert to inform Plaintiff's supervisors, including Lt. Melvin, about the "unofficial" accommodation, but on February 10, 2017, Chief Elbert reiterated the importance of keeping their "unofficial" accommodations secret. Chief Elbert further stated that City officials still believed Plaintiff did not qualify for disability accommodations and an official request would result in a "major fight."

On April 7, 2017, Plaintiff alleges Lt. Melvin confronted Plaintiff over why he had not answered two off-duty calls on April 4 and April 6, 2017. Plaintiff told Lt. Melvin about the "unofficial" accommodation agreement with Chief Elbert. Plaintiff alleges that on May 22, 2017, Lt. Melvin expressed frustration with Plaintiff's unofficial accommodation, and on May 26, 2027, Lt. Melvin gave Plaintiff written counseling in retaliation for his unofficial accommodations. Lt. Melvin continued to complain about the unofficial accommodation arrangement.

On June 23, 2017, Plaintiff learned that Chief Elbert was the individual who had "dug in" against Plaintiff's formal accommodation request from the beginning. The City's HR representative and Captain Stukenholz advised Plaintiff to wait to pursue formal accommodations until after Chief Elbert left his position.

In September 2017, Gary Young filed an internal complaint against Chief Elbert for dishonesty, unbecoming conduct, abuse of authority, insubordination, and violation of the code of ethics, based upon several employees' complaints, including Plaintiff. This complaint resulted in an administrative investigation ("AIC") conducted by the Sarpy County Sheriff's Office. Plaintiff participated as a witness in the investigation. (Filing No. 27 at p. 11; Filing No. 78-1). Plaintiff also personally filed a complaint with the Nebraska Crime Commission ("NCC") regarding Chief Elbert in September 2017. Chief Elbert placed himself on administrative leave beginning September 13, 2017. Plaintiff formally requested recognition of his "unofficial" and "secret" accommodations from the City on September 14, 2017, and filed a NEOC/EEOC charge

3

of discrimination against the City on September 15, 2017. On October 19, 2017, the City denied Plaintiff's request for official accommodations as creating an undue hardship. The City then transferred Plaintiff to a Desk Sergeant position, which he characterizes as a move to "isolate and shame" him. (Filing No. 27 at pp. 11-13).

On January 12, 2018, Plaintiff filed an internal complaint against Captain Wood. (Filing No. 27 at p. 13). Plaintiff filed a formal internal complaint against Lt. Melvin on July 26, 2018. (Filing No. 27 at p. 15). Plaintiff alleges that on August 11, 2018, Chief Elbert called Plaintiff and hung up on him, and did the same thing to two other AIC witnesses against Chief Elbert. Chief Elbert was reinstated on September 11, 2018, and Plaintiff thereafter filed a complaint with the City regarding Chief Elbert's hang-up call. Lt. Melvin was appointed as one of the investigators of that complaint. Plaintiff commenced this action on September 21, 2018, and ultimately resigned from his employment on June 3, 2019.

The dispute before the Court pertains to the Notices of Intent to Serve Rule 45 Subpoena Duces Tecum that Plaintiff seeks to serve upon the NCC, the Sheriff of Sarpy County, and upon Elbert. In the subpoena to the NCC, Plaintiff requests copies of transcripts, evidence, communications, recorded audio/video statements, investigatory materials, and the like, exchanged between the NCC and the Sarpy County Sheriff's Office, the City of Bellevue, and/or Mark Elbert arising out of Plaintiff's individual complaint filed against Elbert on September 25, 2017. (Filing No. 49). In the subpoena to the Sheriff of Sarpy County, Plaintiff requests copies of documents, communications, recorded audio/video statements, investigatory materials, and the like, arising out of the AIC complaint against Elbert investigated by the Sarpy County Sheriff's Office. (Filing No. 50). Plaintiff's subpoena to Elbert requests the same documents sought by his subpoenas to the NCC and to Sarpy County. (Filing No. 51).

## ANALYSIS

The federal and local rules limit a party's capacity to object to discovery requested in a third-party subpoena. See Fed. R. Civ. P. 45; NECivR 45.1. "[An] adverse party has standing to object to a third-party subpoena on grounds of relevance or to protect a personal right or privilege in the information requested." *Jenkins v. Pech*, No. 8:14CV41, 2015 WL 728305, at *3 (D. Neb. Feb. 19, 2015)(citing *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, No. 8:06CV458, 2009 WL 1562851, at *3 (D. Neb. June 1, 2009)). Plaintiff seeks to serve subpoenas on three

non-parties. Therefore, at this time the scope of the Court's review is limited to whether the subpoenas seek documents relevant to any claim or defense in this action and whether the City has a personal right or privilege in the information requested.

Plaintiff's subpoena to the NCC seeks documents and communications generated from his complaint against Elbert. (Filing No. 49). The City objects to this subpoena on the basis of relevance. The City believes Plaintiff's complaint was investigated simultaneously with a complaint by a different individual, and that information from the other individual's investigation is not relevant to this lawsuit. (Filing No. 78-1). Additionally, the City asserts Plaintiff's complaint to the NCC "was not a complaint seeking a determination as to whether Elbert reasonably accommodated Plaintiff, whether Plaintiff was discriminated against, nor whether Plaintiff was constructively discharged" but instead was "an attempt to have the [NCC] review any violation(s) of police standards and conducts, and is therefore not relevant here." (Filing No. 77 at p. 10). Similarly, the City objects to Plaintiff's proposed subpoena to the Sarpy County Sheriff's Office (Filing No. 50) on the basis of relevance because the administrative investigation against Elbert included complaints by individuals other than Plaintiff and because the other complaints did not involve allegations of disability discrimination. The City argues, "[S]imply because Elbert was the subject of complaints by other employees does not make the investigation into the complaints relevant to this action." (Filing No. 77 at p. 7).

The scope of relevant discovery is not as narrow as the City suggests. Rather, "[d]iscovery requests should be considered relevant if there is any possibility the information sought is relevant to any issue in the case and should ordinarily be allowed, unless it is clear the information sought can have no possible bearing on the subject matter of the action." *Met-Pro Corp. v. Industrial Air Technology, Corp.*, No. 8:07CV262, 2009 WL 553017, * 3 (D. Neb. March 4, 2009); see *E.E.O.C. v. Woodmen of the World Life Ins. Society*, 2007 WL 1217919 at *1 (D. Neb. Mar. 15, 2007)(quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)("Relevancy is to be broadly construed for discovery issues" and "encompass[es] 'any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"). Review of Plaintiff's allegations in his Amended Complaint indicate that Elbert's conduct is central to Plaintiff's claims, including his claims for discrimination, retaliation, harassment, and interference and intimidation. The City largely denies Plaintiff's substantive allegations and has raised affirmative defenses that its actions were

"legitimate, non-discriminatory and utilized good faith business judgment" and that it "acted in good faith to comply with all applicable equal employment laws and acted with reasonable grounds to believe that its actions did not violate the statutes." (Filing No. 39). To support his claims, Plaintiff may present direct evidence of discrimination, if such evidence exists, or evidence creating an inference of unlawful discrimination, the latter of which may be derived from the investigatory materials sought by the subpoenas. See, e.g., *St. Martin v. City of St. Paul*, 680 F.3d 1027, 1033 (8th Cir. 2012). The administrative investigation against Elbert arose out of employee complaints, including Plaintiff's, and their allegations that Elbert engaged in misconduct including dishonesty, unbecoming conduct, abuse of authority, insubordination, and violation of the code of ethics. The claims and defenses in this case necessarily implicate Elbert's actions and credibility. Given the broad scope of relevant discovery, the Court finds that, as written, Plaintiff's subpoenas seek documents that could reasonably bear on the issues in this case. The custodians of such records will be in the best position to raise their own objections to Plaintiff's document requests as necessary. Additionally, this Order will not foreclose the non-parties from raising specific relevance objections once served with the subpoenas.

The City also contends that the Sarpy County investigative file is confidential and protected. The City states that, although the Sarpy County Sheriff's Office, rather than the City, conducted the investigation and is in possession of the file, the City's confidentiality policies still apply. (Filing No. 77). The Sarpy County Sheriff's Office is the custodian of the documents requested, not the City. Therefore, the Court will permit Plaintiff to serve the subpoena on Sarpy County and permit the County to raise and argue any objections it may have regarding its obligation to keep the documents confidential.

Finally, the City argues that the privacy interests of the other employees involved in the complaints are implicated because an investigative file is akin to a personnel file. (Filing No. 77 at p. 9)(citing *Kaufman v. W. Sugar Co-op., Inc.*, No. 7:06CV5017, 2007 WL 2509480, at *4 (D. Neb. Aug. 29, 2007)). Based on the limited information before the Court, the Court cannot say that the investigatory files sought by Plaintiff implicate the same privacy concerns as personnel files. Personnel files contain personal information such as social security numbers and protected health information. There is no information before the Court to suggest that the investigatory files sought by Plaintiff include that type of private employee information. Moreover, this Court and the Eighth Circuit have found that personnel files of non-party employees may be relevant

and discoverable in cases involving employment claims. See *Royce v. Douglas Cty. Sch. Dist. No. 54*, No. 8:11CV328, 2012 WL 2952381, at *2 (D. Neb. July 19, 2012) (citing *Missouri Nat. Educ. Ass'n v. New Madrid County R–1 Enlarged Sch. Dist.*, 810 F.2d 164, 166 (8th Cir. 1987). At this time, the Court cannot say that employee privacy concerns should prevent Plaintiff from serving the subpoenas on the non-parties.

In conclusion, on the record before the Court, Plaintiff's subpoenas appear to seek discovery relevant to the claims and defenses in this case and the defendant has not demonstrated a personal privilege in the documents sought. Therefore, the defendant's objections are overruled and Plaintiff is given leave to serve the subpoenas on the non-parties. Those non-parties are, of course, entitled to raise their own objections to the subpoenas once served, as appropriate. Upon consideration,

**IT IS ORDERED** that Defendant's Objections (Filing Nos. 61, 63, 69) are overruled. Plaintiff is granted leave to serve the subpoenas on the non-parties.

Dated this 15th day of May, 2020.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge