# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ROBERT BAILEY, | |
| Plaintiff, | 4:18CV3132 |
| vs. | ORDER |
| CITY OF BELLEVUE, NEBRASKA, a political subdivision of the State of Nebraska, | |
| Defendant. | |

This matter is before the Court on the Motion to Compel RFP No. 2 (Filing No. 106) and the Motion to Compel Defendant's Interrogatory Answers and Responses to Plaintiff's Request for Production (1st and 2nd Sets) (Filing No. 122) filed by Plaintiff, Robert Bailey. For the following reasons, the Court will grant the motions, in part, and in part deny the motions.

## BACKGROUND

The Court previously outlined the background and Plaintiff's allegations supporting his claims under the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), 42 U.S.C. §§ 12101 et seq., and the Nebraska Fair Employment Practices Act ("NFEPA"), Neb. Rev. Stat. §§ 48-1101 et seq., for disability discrimination, retaliation, interference and intimidation, and hostile work environment. (Filing No. 89). The Court will incorporate that background in this Order and provides the following additional summary of Plaintiff's allegations (Filing No. 27) relevant to the instant motions:

Plaintiff's claimed disabilities are major depression, panic disorder, anxiety, chronic insomnia, and heart disease, and Defendant was aware of his impairments. Plaintiff first sought disability accommodations in spring of 2015, but Chief Mark Elbert discouraged him from doing so. Plaintiff suffered a heart attack in January 2016 and again sought an accommodation. At that time, Lieutenant Timothy Melvin and Captain Robert Wood were Plaintiff's supervisors and complained about Plaintiff not being required to answer his phone off duty and using sick leave due to insomnia. Plaintiff withdrew his formal request for accommodations in November 2016 at Chief Elbert's behest and in exchange for a secret, unofficial accommodation. In April 2017, Lieutenant Melvin confronted Plaintiff about why he had not answered two off-duty calls, which

was part of Plaintiff's unofficial and secret accommodation. Thereafter, Plaintiff informed Lieutenant Melvin, Captain Wood, and Captain David Stukenholtz about the unofficial accommodation. Lieutenant Melvin expressed frustration with the unofficial accommodation and, as Plaintiff alleges, retaliated by giving Plaintiff written counseling in May 2017 for failing to answer the phone off-duty. Thereafter, Plaintiff complained to Captain Wood about that perceived retaliation by Lieutenant Melvin.

In June 2017, Plaintiff met with Captain Stukenholtz, who encouraged Plaintiff not to involve an attorney and wait until Chief Elbert left his position before pursuing formal accommodations. In September 2017, Chief Elbert took administrative leave after receiving an internal complaint for dishonesty, unbecoming conduct, abuse of authority, insubordination, and violation of the code of ethics, based upon a group of officer's complaints, including Plaintiff. Plaintiff also personally filed a complaint with the Nebraska Crime Commission ("NCC") regarding Chief Elbert in September 2017. Plaintiff also filed NEOC and EEOC charges of discrimination on September 15, 2017. While Chief Elbert was on leave, Elbert called Plaintiff's house and hung up to intimidate and harass Plaintiff.

After Chief Elbert went on leave, Plaintiff again requested a formal accommodation, which was denied by Defendant on October 19, 2017. Chief Elbert was reinstated in his position in September 2018[1] and Plaintiff filed a complaint with the City regarding the hang-up call he had received from Elbert in August 2018. Lieutenant Melvin was one of the investigators of the complaint and deemed it unfounded.

Plaintiff sent an email on October 3, 2017, to Lieutenant Melvin, Captain Wood and the then Acting Chief, Stukenholtz, in rebuttal to the written counseling Lieutenant Melvin had given Plaintiff in May 2017. Captain Wood rejected the response as untimely, although he previously told Plaintiff he was "free to submit such a rebuttal." During a meeting on November 1, 2017, Acting Chief Stukenholtz stated that as long as he was chief, Plaintiff "would not be harassed or retaliated against."

On January 12, 2018, Plaintiff filed an internal complaint against Captain Wood based upon Captain Wood's dishonesty regarding statements he made regarding Plaintiff's May 2017 written counseling. In February and March 2018, Plaintiff sent emails to Acting Chief

---

[1] Elbert ultimately retired as Chief of Police on December 31, 2019, and became the City's Community Development Director. (Filing No. 115-2).

Stukenholtz listing concerns and perceived discriminatory treatment by Captain Wood. In a March 2018 email, Acting Chief Stukenholtz reiterated "there will be no retaliation as long as I am the Chief of Police." Captain Wood resigned in April 2018. Before he resigned, Captain Wood met with Plaintiff and recorded the meeting, and then asked to exchange that tape with Plaintiff's tape of a meeting he recorded with Captain Wood in May 2017.

Plaintiff sent an email to Acting Chief Stukenholtz and the Human Resources Director in July 2018 stating he had been suffering from anxiety and insomnia from ongoing harassment, discrimination, and retaliation, but that no party initiated an investigation after this email. In July 2018, Plaintiff filed a formal internal complaint against Lieutenant Melvin because "the City had failed to take any action against Melvin for his discriminatory harassment and retaliation."

Plaintiff filed this action on September 21, 2018. In December 2018, Captain Stukenholtz gave Plaintiff a " 'substandard' rating in a category because Bailey had previously filed or authorized complaints against Elbert, Wood, and Melvin for discrimination, harassment, and retaliation." Plaintiff filed a rebuttal to the performance evaluation and complained to the City Administrator, Jim Ristow, that the "substandard" rating was further discrimination, harassment, and retaliation. Ristow ordered an internal investigation of Stukenholtz based upon Plaintiff's complaint, which was determined unfounded, and Plaintiff's substandard performance evaluation was not changed. Plaintiff filed additional NEOC and EEOC charges of discrimination, retaliation, and interference on March 8, 2019, and resigned in June 2019. Plaintiff filed the operative amended complaint on June 26, 2019.

## ANALYSIS

The starting point for all discovery disputes is found in Federal Rule of Civil Procedure 26, which sets forth the scope of discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "Discovery requests should be considered relevant if there is any possibility the information sought is relevant to any issue in the case and should ordinarily be allowed, unless it is clear the information sought can have no possible bearing on the subject matter of the action." *Met-Pro Corp. v. Indus. Air Tech., Corp.*, No. 8:07CV262, 2009 WL 553017, * 3 (D. Neb. March 4, 2009)(Thalken, MJ). However, "[t]he proponent of discovery must make a threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required. *Id.* (citing *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1993)). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." *Id.* (citing *Cervantes v. Time, Inc.*, 464 F.2d 986, 994 (8th Cir. 1972)).

**Plaintiff's Motion to Compel RFP No. 2**

Plaintiff moves to compel Defendant to produce documents responsive to his Request for Production No. 2, which seeks "Copies of Mark Elbert's personnel file and other employment files relating to his performance and/or disciplinary actions," excluding his social security number and "documents relating to banking, health information, and/or beneficiary information." Plaintiff asserts that Chief Elbert, as Chief of Police, "was the key player and ultimate decisionmaker in the discriminatory and retaliatory actions directed at Plaintiff," and that Chief Elbert "was Plaintiff's top-level supervisor and maintained ultimate control over every decision involving [Plaintiff and Plaintiff's] requests for reasonable accommodation under the ADAAA."

Defendant argues Plaintiff has not met his burden to show that the value of the requested documents outweighs Chief Elbert's privacy interests. See *Royce v. Douglas Cty. Sch. Dist. No. 54*, No. 8:11CV328, 2012 WL 2952381, at *3 (D. Neb. July 19, 2012)(stating non-party personnel information is discoverable if the plaintiff demonstrates that "the value of the information sought would outweigh the privacy interests of the affected individuals"). Defendant also asserts the requested documents are not relevant because Chief Elbert was not Plaintiff's immediate supervisor and was not the ultimate decisionmaker leading to any adverse employment action against Plaintiff. (Filing No. 116 at pp. 4-6).

Contrary to Defendant's assertion, Elbert, as Chief of Police, necessarily exercised supervisory authority over Plaintiff and those in his chain of command. Additionally, this is not

a situation where Plaintiff seeks personnel files of a high-ranking supervisor with no personal involvement in any of the factual allegations in the complaint; instead, as previously noted by the Court, Plaintiff's allegations indicate that Elbert's conduct is a central part of Plaintiff's claims, including his claims for discrimination, retaliation, harassment, and interference and intimidation. For example, Plaintiff alleges Chief Elbert convinced Plaintiff to stop pursing formal disability accommodations by promising a "secret accommodation" that required Plaintiff to lie to his supervisors. Plaintiff also alleges Chief Elbert made statements about not wanting another disabled officer in his department and was "dug in" against Plaintiff's request for disability accommodations. For these reasons, the Court is persuaded that Chief Elbert's personnel and employment files may contain information relevant to Plaintiff's claims. See, e.g., *Lyoch v. Anheuser-Busch Companies, Inc.*, 164 F.R.D. 62, 68-69 (E.D. Mo. 1995)(permitting discovery of the plaintiff's supervisor's personnel file in Title VII discrimination action because it could contain "evidence regarding the manner in which he treated other employees, complaints about his conduct, and actions taken by Defendant in response to such complaints."); *Trickey v. Kaman Indus. Techs. Corp.*, No. 1:09CV26 SNLJ, 2010 WL 3892228, at *4 (E.D. Mo. Sept. 29, 2010)(permitting limited discovery of personnel files of non-parties alleged to have engaged in discriminatory behavior); *Burt v. Charter Commc'ns, Inc.*, No. 4:16CV1670RLW, 2017 WL 3912342, at *2 (E.D. Mo. Sept. 5, 2017)(concluding complaints, performance reviews, or investigations of the plaintiff's supervisor were relevant to the plaintiff's claims for discrimination and retaliation).

Defendant argues that if the Court requires production of any information in Chief Elbert's personnel files, such production be limited. The Court does agree with Defendant that Plaintiff should not be provided *carte blanche* access to all of Chief Elbert's personnel and employment files from the date he was hired in 1996 through the date he retired on December 31, 2019, but the Court does not necessarily agree with Defendant's narrow view of potentially relevant files. On the other hand, the Court also does not agree with Plaintiff's extremely broad view of what files are discoverable. Although Plaintiff's request for Chief Elbert's "personnel file and other employment files relating to his performance and/or disciplinary action" appears straightforward enough, Plaintiff's reply brief explains that this request encompasses: information related to Chief Elbert's retirement as the Chief of Police; "information related to training and education that Elbert received . . . [related] to his duties, job functions, professional

and personal obligations, on and off the job conduct, code of ethics, expectations regarding his on and off the job behavior, and on the job goals and expectations, as well as training related to the state and federal laws at issue herein, including but not limited to the ADAAA, reasonable accommodation, discrimination, harassment, interference, manipulation, and retaliation;" "information related to awards and/or commendations" and why he did or did not receive awards; his "job application, references and information relating to [his] application to the U.S. Marshals' office . . . as well as the reasons why [he] was not selected;" and his pay information. (Filing No. 129).

Striking the appropriate balance of files to be disclosed, considering the need for that information in this case and Chief Elbert's right to privacy, requires examination of the types of personnel and employment files in existence for Bellevue Police Department ("BPD") officers. According to Defendant, a City employee employed by the BPD has the following files: 1) a "personnel file" maintained in the Human Resources Department; (2) a "BPD File" containing full evaluations, promotional histories, unit transfer histories, written approvals, pay information, commendations, awards, and recognitions; (3) a "hiring file" containing information like background investigations, polygraphs, medical and psychological reports, and oral board notes, and is combined with the BPD File when the employee's employment ends; (4) a "supervisor's performance log" also known as a "Blue Book," containing entries throughout the career of an officer by direct supervisors or other command officers in the chain of command, which includes positive recognition, verbal counseling, disciplinary items, and other information relevant to an officer's day to day work, and is combined with the BPD File and hiring file when employment ends; and (5) "Allegation of Misconduct, Inquiry, and Commendation Files" ("AIC Files"), which are created when an employee receives a "formal" internal or citizen complaint, and contains the investigation and the result of the complaint; if there is discipline, the disposition form would be placed in the personnel file and BPD file. (Filing No. 115-1).

First, the Court finds that Chief Elbert's "hiring file" should not be produced at all, as that contains information with little to no relevance to the issues in this case. To the extent any relevance exists, it is outweighed by Chief Elbert's privacy interests.

Next, it is unclear to the Court whether it is feasible for Defendant to produce responsive documents in the other types of files in a piecemeal fashion, but the Court makes the following findings. The Court does find that some categories of documents in the BPD File, Blue Book,

and AIC Files may be relevant to Plaintiff's claims and Defendant's defenses; specifically, evaluations, counseling, disciplinary action, and internal complaints by Plaintiff or by other officers, related to allegations of disability discrimination, retaliation, harassment, and interference and intimidation for seeking disability accommodations. The Court does not agree with Plaintiff that Chief Elbert's pay information, application for the U.S. Marshals office or the reasons why he was not selected, promotional history, unit transfers, awards, recognitions, and all citizen complaints are relevant and/or proportional to the needs of the case. The Court also finds it appropriate to create a temporal limit on Plaintiff's request. Plaintiff's amended complaint alleges Chief Elbert first began discussing changing Plaintiff from an eight-hour shift to the twelve-hour road patrol shift in the spring of 2015. Plaintiff resigned from his employment on June 3, 2019. Therefore, Defendant shall only have to produce responsive files between January 2015 and June 2019, unless any files after that date make specific reference to Plaintiff or any of Plaintiff's allegations in this lawsuit. Defendant may redact or withhold any pay information, banking, health and other benefits information, and any other private information of that nature. Defendant does not elaborate on what exactly a "personnel file" contains, but to the extent it contains any documents related to Plaintiff or any allegations of disability discrimination, retaliation, harassment, and interference and intimidation for seeking disability accommodations by Plaintiff or other officers, those documents should be produced. Finally, the Court notes that the protective order in this case should alleviate Defendant's privacy concerns with disclosure of the above described documents.

### Plaintiff's Motion to Compel Defendant's Interrogatory Answers and Responses to Plaintiff's Request for Production (1st and 2nd Sets)

Plaintiff's second motion to compel seeks an Order Compelling Defendant to fully answer Interrogatory Nos. 3, 4, 8, 11, 15-26, 42 and 44; and to provide complete responses to Request for Production (first set) Nos. 15-18, 37, 42, 56, 63, and 66; and to Request for Production (second set) Nos. 2c, 2d, 2e, 2f, 3a, 3b, 3d, 9, 12, 15, 18, 22, and 41. Subsequent to filing the motion, Plaintiff received investigatory files from Sarpy County that resolves Plaintiff's motion as to Request for Production Nos. 15 and 16. ([Filing No. 161 at p. 3](#)).

First, the Court finds Plaintiff has untimely raised the issues with Defendant's interrogatories. Defendant first served Plaintiff with its answers to interrogatories on **April 19,**

**2019**. Ten months later, in February 2020, the parties met and conferred regarding outstanding discovery issues, including Defendant's answers to interrogatories.[2] The undersigned magistrate judge held telephone conferences with the parties regarding discovery disputes on February 26, March 18, March 27, May 15, May 29, and July 20, 2020, and fielded emails from counsel regarding the same. Despite the extraordinary amount of time the undersigned has spent with the parties in this case regarding their many discovery disputes, not once prior to filing the instant motion to compel has Plaintiff brought any deficiencies in Defendant's answers to interrogatories to the Court's attention for discussion. Now, more than a year later, Plaintiff believes eighteen of Defendant's answers are insufficient. The deficiencies described by Plaintiff would not have taken over a year to discover and raise before the Court. For example, Plaintiff takes issue with Defendant's answer to Interrogatory No. 11, which asks Defendant to state "each and every fact you claim supports your denial of Paragraph 10 of the Complaint, and identify each witness and all evidence corroborating said facts." (Filing No. 121-2). Defendant identified witnesses and did generally answer, but not to the specificity Plaintiff believes it should be answered. It is true that Plaintiff's motion was filed on the deadline for filing motions to compel and is therefore technically timely.[3] However, Plaintiff does not explain why he could not, and did not, raise these issues earlier. Under the circumstances, the Court will deny Plaintiff's motion to compel as it pertains to Defendant's answers to interrogatories.

The Court will address the merits of Plaintiff's motion as it pertains to requests for production of documents because the issues of whether Plaintiff is entitled to discovery of investigatory files and personnel files of non-parties has been discussed and addressed by the Court on more than one occasion.

---

[2] Defendant asserts that its answers to Interrogatory Nos. 42 and 44 were never discussed during the parties' meet and confer. (Filing No. 151 at p. 3). Plaintiff disagrees. (Filing No. 161 at pp. 2-3).

[3] Other courts have denied technically timely filed motions to compel where the moving party waited unreasonably long to bring the issues before the court. See, e.g., *Austin v. United Parcel Serv. Inc.*, 2002 WL 31050867, at *1 (S.D. Iowa Sept. 13, 2002)(affirming magistrate judge's decision to deny a motion to compel as untimely because although the motion was technically filed on time, the plaintiff had the defendant's discovery responses and objections for nearly five months, during which time the plaintiff did not seek intervention of the court to correct perceived deficient discovery responses); accord *Haviland v. Catholic Health Initiatives-Iowa, Corp.*, 692 F. Supp. 2d 1040, 1044 (S.D. Iowa 2010)(affirming magistrate judge's denial of motions to compel as untimely where plaintiffs waited until eleven days before the discovery deadline to file the motions related to discovery issues that had been identified by the parties for over a year); *Buttler v. Benson,* 193 F.R.D. 664, 666 (D. Colo. 2000)(denying motion to compel where the plaintiff waited one and one-half years after the initial discovery request to file a motion to compel, concluding that "the plaintiff ha[d] failed to seek judicial relief for an unreasonably long period of time.").

Plaintiff categorizes his twenty outstanding requests for production into those seeking "investigatory files" and those seeking "personnel and disciplinary documents." Plaintiff asserts Request for Production Nos. 17-18, 37, 63, and 66, and Request for Production Nos. (second set) 2c, 2d, 2e, 2f, 3a, 3b, 3d, 9, 12, 15, and 18 generally seek documents and communications related to investigations arising out complaints made by Plaintiff (or other subordinate officers) about alleged misconduct and discrimination by Chief Elbert, Lieutenant Melvin, Captain Wood, and Captain Stukenholtz. (Filing No. 126 at pp. 5-6). Plaintiff's Request for Production (first set) Nos. 42, 56, 63, 66, and No. 12 of his second set "relate to counseling and/or discipline issued to Elbert, Wood, Melvin and Stukenholtz." (Filing No. 126 at p. 7). Defendant objects to all the requests because the information sought is either privileged, outside of the scope of relevant discovery, or has already been produced through the subpoenas duces tecum issued by Plaintiff to the Sarpy County Sheriff's Office and the NCC and is therefore duplicative and unduly burdensome. (Filing No. 151 at pp. 4-5).

In general, the Court largely agrees with Defendant that Plaintiff's requests are overly broad, not proportional to the needs of this case, and/or seek privileged information or communications. To put Plaintiff's requests in context, it bears repeating that his claims in this case are for disability discrimination, retaliation, interference and intimidation, and hostile work environment under the ADAAA and the NFEPA. To establish a prima facie case of discrimination under the ADAAA, a plaintiff must show that (1) he is a disabled person within the meaning of the ADAAA; (2) he was qualified to perform the essential functions of the job, with or without a reasonable accommodation; and (3) he suffered an adverse employment action because of his disability. See *E.E.O.C. v. Wal-Mart Stores, Inc.,* 477 F.3d 561, 568 (8th Cir. 2007). To demonstrate a hostile work environment because of an alleged disability, a plaintiff must show that the defendant subjected him to unwelcome harassment because of his alleged disability and that the harassment was so severe as to affect the terms and condition of his employment. See *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 778 (8th Cir. 2012) (internal quotation marks and citations omitted). A retaliation claim typically requires a plaintiff to show (1) that he engaged in statutorily protected activity; (2) an adverse employment action was taken against him; and (3) a causal connection exists between the two events. See *Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1042-43 (8th Cir. 2007). Plaintiff also has asserted a claim under 42 U.S.C. § 12203(b), which makes it unlawful to "coerce, intimidate, threaten, or

interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed . . . any right granted or protected by [the ADAAA]."

The Court, like Defendant, is overwhelmed by the breadth of Plaintiff's requests. For example, just one of the twenty requests for production in dispute asks for the following:

| Request 2a | True and correct copies of all correspondence regarding, related to, or arising out of the September 2017 Complaint, between Mark Elbert and/or his attorney(s) (including Ted Boecker) and any of the following persons: <br> (a) City Administrator Joe Mangiamelli; <br> (b) Mayor Rita Sanders; <br> (c) investigators of the September 2017 Complaint; <br> (d) Sarpy County Sheriff Jeff Davis; <br> (e) Sarpy County Chief Deputy Greg London; <br> (f) City Attorney Pat Sullivan; <br> (g) Assistant City Attorney Molly Miller; <br> (h) Assistant City Attorney Tim Buckley; <br> (i) Assistant City Attorney Travis Jacott; <br> (j) former Assistant City Attorney Angela Forss Schmit; <br> (j) Acting Chief/Captain Dave Stukenholtz; <br> (k) Captain/Lieutenant Tim Melvin; <br> (l) Captain Robert Wood; <br> (m) Tom Mumgaard; <br> (n) BPD Professional Standards Officer Laurie Synowiecki; <br> (o) Sarpy County Sheriff's Office Investigator Capt. Monty Daganaar; <br> (p) Crime Training Center Director Brenda Urbanek; <br> (r) Sarpy County Sheriff's Office Investigator Lt. Chris Teuscher; <br> (s) City Administrative Services Director Karen Jackson; <br> (t) City Finance Director Rich Severson; <br> (u) City Human Resources Manager Ashley Decker; <br> (v) Tom Marfisi; <br> (w) City Administrator Jim Ristow; <br> (x) Mayor Rusty Hike; <br> (y) City Attorney Bree Robbins; and/or <br> (z) City paralegal Tahnee King. <br> [Note that Pat Sullivan has stated both publicly and privately that his office and partners/associates did not represent Mark Elbert in this complaint and have never personally represented Mark Elbert. Likewise, on June 3, 2019, Bree Robbins verified to Plaintiff that "at no point have I represented Chief Elbert, Captain Stukenholtz, Captain Melvin, or Retired Captain Wood or their personal interest."]; |
|---|---|

(Filing No. 121-4 at p. 2). This action is not to litigate the propriety of the investigation and reinstatement of Elbert as Chief of Police. Instead, as outlined above, this action is about Plaintiff's claims for disability discrimination, harassment because of his disability, retaliation for engaging in statutorily protected activity, and for intimidation or interference with Plaintiff's exercise of rights protected by the ADAAA. Though the Court previously recognized Plaintiff's claims and defenses "necessarily implicate Elbert's actions and credibility," such that Plaintiff should be permitted to serve subpoenas seeking some of the same information from non-parties, the Court did not foreclose the possibility of revisiting relevance and proportionality at a later date and upon a more fully developed record. See Filing No. 89.

After review, the Court finds Plaintiff has not demonstrated the relevance for the majority of documents sought in his motion. See *Met-Pro Corp*, No. 8:07CV262, 2009 WL 553017, *3. Neither party individually addresses each and every one of the twenty disputed requests for production listed in Plaintiff's motion to compel, and therefore neither will the Court. Instead,

the Court makes the following general findings. Lieutenant Melvin and Captain Wood directly supervised Plaintiff, and both are alleged to have taken some type of adverse action against Plaintiff because of his requests for disability accommodation. See *Trickey v. Kaman Indus. Techs. Corp.*, No. 1:09CV26 SNLJ, 2010 WL 3892228, at *4 (E.D. Mo. Sept. 29, 2010)(permitting limited discovery of personnel files of non-parties alleged to have engaged in discriminatory behavior).  So, similar to Chief Elbert, Defendant shall produce evaluations, counseling, disciplinary action, and internal complaints by Plaintiff or by other officers, related to allegations of disability discrimination, retaliation, harassment, and interference and intimidation for seeking disability accommodations, contained in the personnel files of Lieutenant Melvin and Captain Wood, within the same temporal limits described for Chief Elbert above.  Defendant shall also produce any non-privileged communications regarding the same. This production should include AIC files created in response to Plaintiff's complaints against Lieutenant Melvin, Captain Wood, and Captain Stukenholz, as cited in his amended complaint. However, the Court finds that the remainder of Captain Stukenholz's personnel files have little relevance to this case, and his privacy outweighs any such minor relevance.  The remainder of Plaintiff's motion is denied.

Finally, Plaintiff's brief references an unspecified outstanding request for "documents related to his disability pension application."  (Filing No. 126 at p. 10).  Defendant responds that it has fully responded to all requests for production related to the production of the Plaintiff's retirement documents.  (Filing No. 151 at p. 12).  Plaintiff does not address this issue in his reply brief.  Therefore, the Court will deny Plaintiff's motion as to this request.  Upon consideration,

**IT IS ORDERED:**

1. Plaintiff's Motion to Compel RFP No. 2 (Filing No. 106) is granted, in part, and in part denied, as set forth above; and
2. Plaintiff's Motion to Compel Defendant's Interrogatory Answers and Responses to Plaintiff's Request for Production (1st and 2nd Sets) (Filing No. 122) is granted in part, and in part denied, as set forth above.

Dated this 23rd day of September, 2020.

                                                      BY THE COURT:

                                                      s/Michael D. Nelson
                                                      United States Magistrate Judge